UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER BAIRD,<br><br>               Plaintiff,<br><br>   -against-<br><br>FLIR SYSTEMS INC., JAMES J. CANNON, EARL R. LEWIS, JOHN D. CARTER, WILLIAM W. CROUCH, CATHERINE A. HALLIGAN, ANGUS L. MACDONALD, MICHAEL T. SMITH, CATHY A. STAUFFER, ROBERT S. TYRER, JOHN W. WOOD JR., and STEVEN E. WYNNE,<br><br>               Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Christopher Baird, by Plaintiff's undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against FLIR Systems, Inc. ("FLIR" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of FLIR by Teledyne Technologies Incorporated ("Teledyne").

1

2. On January 4, 2021, FLIR and Teledyne entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which FLIR will merge with and into Teledyne, with Teledyne continuing as the surviving company (the "Proposed Transaction").

3. Pursuant to the terms of the Merger Agreement, FLIR's common stock shareholders will be entitled to receive $28.00 in cash (the "Cash Consideration") and 0.0718 shares of Teledyne common stock (the "Exchange Ratio" and, together with the Cash Consideration, the "Merger Consideration") for each share of FLIR common stock that they own. Based on Teledyne's 5-day volume weighted average price as of December 31, 2020, the last trading day before the public announcement of the signing of the Merger Agreement, the Merger Consideration was worth approximately $56.00 per share of FLIR common stock.

4. On or about March 4, 2021, in order to convince FLIR's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Registration Statement contains materially incomplete and misleading information concerning the background of the Proposed Transaction and the valuation analyses performed by FLIR's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs" or the "Financial Advisors") regarding the Proposed Transaction.

6. The Proposed Transaction is expected to close by the second or the third quarter of 2021 and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks. Therefore, it is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the special meeting, so Plaintiff can properly exercise all corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to FLIR's public common stockholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, FLIR's common stock trades on the Nasdaq Global Select Market ("Nasdaq"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of FLIR common stock.

12. Defendant FLIR is a Delaware corporation with its principal executive offices located at 27700 SW Parkway Avenue, Wilsonville, Oregon and a world leader in developing technologies that enhance perception and awareness, including thermal imaging systems, visible-light imaging systems, locater systems, measurement and diagnostic systems, and advanced threat-detection solutions. FLIR's common stock trades on the Nasdaq under the ticker symbol "FLIR."

13. Defendant James J. Cannon ("Cannon") is, and has been at all relevant times, the Company's President and Chief Executive Officer, and a director of the Company.

14. Defendant Earl R. Lewis ("Lewis") is, and has been at all relevant times, the Chairman of the Board of Directors of the Company.

15. Defendant Michael T. Smith ("Smith") is, and has been at all relevant times, a director of the Company. Defendant Smith has also been at all relevant times, a director of Teledyne.

16. Defendant John D. Carter ("Carter") is, and has been at all relevant times, a director of the Company.

17. Defendant William W. Crouch ("Crouch") is, and has been at all relevant times, a director of the Company.

18. Defendant Catherine A Halligan ("Halligan") is, and has been at all relevant times, a director of the Company.

19. Defendant Angus L. Macdonald ("Macdonald") is, and has been at all relevant times, a director of the Company.

20. Defendant Cathy A. Stauffer ("Stauffer") is, and has been at all relevant times, a director of the Company.

21. Defendant Robert S. Tyrer ("Tyrer"), is and has been at all relevant times, a director of the Company.

22. Defendant John W. Wood, Jr. ("Wood"), is and has been at all relevant times, a director of the Company.

23. Defendant Steven E. Wynne ("Wynne"), is and has been at all relevant times, a director of the Company.

24. The Defendants identified in paragraphs 13 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25. FLIR is a publicly traded Delaware corporation headquartered in Wilsonville, Oregon that is a world leader in developing technologies that enhance perception and awareness, including thermal imaging systems, visible-light imaging systems, locater systems, measurement and diagnostic systems, and advanced threat-detection solutions. FLIR's common stock trades on the Nasdaq under the ticker symbol "FLIR."

26. In the first quarter of 2020, FLIR reorganized its business as part of a "Project Be Ready" restructuring program, which resulted in identification of two reportable operating segments: (i) Industrial Technologies, and (ii) Defense Technologies.

27. Since this restructuring, the FLIR has positioned itself for continued, sustained economic growth in the coming years.

28. Indeed, along with the financial results that FLIR released on October 30, 2020, less than three months before the Proposed Transaction was announced, FLIR issued a press release entitled *FLIR Systems Announces Third Quarter 2020 Financial Results*, which reaffirmed its current

5

strategies, including Project Be Ready, stating in part:

> Commenting on FLIR's third quarter results, Jim Cannon, President and Chief Executive Officer, said, "I'm pleased with our third quarter results despite dynamic macro-economic conditions arising from the pandemic across some of the end markets we serve. We delivered important program wins, brought innovative new products to market, and on a year over year basis, expanded margins and drove earnings growth. Total backlog of $899 million remained at near-record levels, up 10.9% from the prior year quarter. ***In addition, we continue to realize expense savings through the ongoing execution of Project Be Ready, which aims to help our business profitably scale over the longer term while reducing costs in the near term***. As a result, we improved adjusted operating margins by 110 basis points and adjusted net income by nearly 8% from the third quarter last year. ***As momentum continues to build across the enterprise, we believe our third quarter performance provides further evidence that the strategic pivot we embarked upon two years ago is working***."
>
> Mr. Cannon concluded, "Based on our learnings from operating in the COVID-19 environment, our results year-to-date and outlook for the remainder of the fourth quarter, today we are re-initiating guidance for the full year 2020. Importantly, we expect to achieve year-over-year improvement in adjusted earnings per diluted share in 2020. Our commitment to driving value for shareholders remains at the forefront of everything we do and ***I feel confident that FLIR is well-positioned as we look to the future.***"

29.    Thus, the Proposed Transaction comes at a time when FLIR's future success was not fully reflected by its share price. The Proposed Transaction will "compensate" FLIR's public stockholders with Merger Consideration that fails to adequately compensate them for the intrinsic value of their shares.

30.    Despite FLIR's intrinsic value and growth prospects, the Individual Defendants are agreeing to a merger that deprives FLIR's public shareholders of the ability to partake in the Company's individual growth and instead cashes them out in part and dilutes the value of their shares with an inadequate interest in Teledyne. The Individual Defendants breached their fiduciary duties owed to FLIR's shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration, and by allowing the unfair and flawed sales process to unfold in the manner that it did, which will cause Plaintiff and the Class to receive an inadequate Merger Consideration while Company insiders receive millions of dollars in severance payments and accelerated vesting of their

6

restricted stock units.

**The Announcement of the Proposed Transaction**

31. On January 4, 2021, Teledyne and FLIR issued a joint press release to announce the Proposed Transaction, which stated in part:

### TELEDYNE TO ACQUIRE FLIR SYSTEMS

*Cash and Stock Transaction Valued at Approximately $8.0 Billion*

*Teledyne and FLIR to Host Joint Conference Call and Webcast at 11:00 a.m. Eastern Today*

THOUSAND OAKS, Calif. and ARLINGTON, Va. – January 4, 2021 – Teledyne Technologies Incorporated (NYSE: TDY) ("Teledyne") and FLIR Systems, Inc. ("NASDAQ: FLIR) ("FLIR") jointly announced today that they have entered into a definitive agreement under which Teledyne will acquire FLIR in a cash and stock transaction valued at approximately $8.0 billion

Under the terms of the agreement, FLIR stockholders will receive $28.00 per share in cash and 0.0718 shares of Teledyne common stock for each FLIR share, which implies a total purchase price of $56.00 per FLIR share based on Teledyne's 5-day volume weighted average price as of December 31, 2020. The transaction reflects a 40% premium for FLIR stockholders based on FLIR's 30-day volume weighted average price as of December 31, 2020.

As part of the transaction, Teledyne has arranged a $4.5 billion 364-day credit commitment to fund the transaction and refinance certain existing debt. Teledyne expects to fund the transaction with permanent financing prior to closing. Net leverage at closing is expected to be approximately 4.0x adjusted pro forma EBITDA with leverage declining to less than 3.0x by the end of 2022.

Teledyne expects the acquisition to be immediately accretive to earnings, excluding transaction costs and intangible asset amortization, and accretive to GAAP earnings in the first full calendar year following the acquisition.

"At the core of both our companies is proprietary sensor technologies. Our business models are also similar: we each provide sensors, cameras and sensor systems to our customers. However, our technologies and products are uniquely complementary with minimal overlap, having imaging sensors based on different semiconductor technologies for different wavelengths," said Robert Mehrabian, Executive Chairman of Teledyne. "For two decades, Teledyne has demonstrated its ability to compound earnings and cash flow consistently and predictably. Together with FLIR and an optimized capital structure, I am confident we shall continue delivering superior returns to our stockholders."

"FLIR's commitment to innovation spanning multiple sensing technologies has allowed our company to grow into the multi-billion-dollar company it is today," said Earl Lewis, Chairman of FLIR. "With our new partner's platform of complementary technologies, we will be able to continue this trajectory, providing our employees, customers and stockholders even more exciting momentum for growth. Our Board fully supports this transaction, which delivers immediate value and the opportunity to participate in the upside potential of the combined company." Jim Cannon, President and Chief Executive Officer of FLIR, said, "We could not be more excited to join forces with Teledyne through this value-creating transaction. Together, we will offer a uniquely complementary end-to-end portfolio of sensory technologies for all key domains and applications across a well-balanced, global customer base. We are pleased to be partnering with an organization that shares our focus on continuous innovation and operational excellence, and we look forward to working closely with the Teledyne team as we bring our two companies together to capitalize on the important opportunities ahead."

**Fourth Quarter Financial Results**

In a separate press release issued today, Teledyne announced improved preliminary financial results for the fourth quarter and full year 2020. The Teledyne press release is available on www.teledyne.com. FLIR noted today that it expects to meet or exceed the full year fiscal 2020 guidance it provided on October 30, 2020.

**Approvals and Timing**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the middle of 2021 subject to the receipt of required regulatory approvals, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, approvals of Teledyne and FLIR stockholders and other customary closing conditions.

**Advisors**

Evercore is acting as exclusive financial advisor and McGuireWoods LLP is acting as legal advisor to Teledyne in connection with the transaction. Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Hogan Lovells US LLP is acting as legal advisor to FLIR in connection with the transaction. Teledyne has entered into a 364-day senior unsecured bridge facility credit agreement with Bank of America as sole lead arranger and administrative agent.

**The Preclusive Deal Protection Devices**

32.     To the detriment of the Company's public shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that

operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

33. The Merger Agreement contains restrictive "no-shop" provisions that prohibit the members of the Board from soliciting proposals relating to alternative offers or business combinations.

34. The "no-shop" provisions strictly prohibit, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations

35. Among other things, the "no-shop" provisions also require the Board to provide Teledyne with written notice of any FLIR Acquisition Proposal, and further requires that the Board provide prior written notice of its intention to terminate the Merger Agreement due to receipt of a FLIR Superior Proposal so that Teledyne may negotiate with FLIR following Teledyne's receipt of the notice and Teledyne Financial can adjust the terms and conditions of the Merger Agreement so that the FLIR Acquisition Proposal ceases to be an FLIR Superior Proposal.

36. In addition, the Merger Agreement provides that the Company will be required to pay to Teledyne a termination fee of $250,000,000.00 with respect to any termination under the No-Shop provisions of the Merger Agreement.

37. Ultimately, these preclusive deal protection devices restrained and continue to restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, and further restrain the Company's public shareholders' ability to disapprove the Proposed Transaction.

38. Indeed, the Proposed Transaction was negotiated through a flawed and conflicted sales process pursuant to which FLIR conducted insufficient outreach and steered the transaction to Teledyne by accelerating the merger process and negotiating the merger during the coronavirus

pandemic.

39.     The aggregate effect of the preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for the Company's shares in the Proposed Transaction and the flawed and conflicted sales process pursuant to which the Proposed Transaction was negotiated, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

40.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**The Registration Statement Omits Material Information**

41.     On or about March 4, 2021, in order to convince FLIR's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Registration Statement with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

42.     The special meeting of FLIR's shareholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

43.     Specifically, the Registration Statement omits two types of material information: (i) information regarding the background of the transaction, and (ii) information that renders the Company's Financial Advisors' fairness analysis materially false, misleading, or incomplete.

**A. The Registration Statement Omits Material Information Regarding the Background of the Transaction**

44.     The Registration Statement states that the FLIR Board "has evaluated and considered

a variety of potential strategic options, including strategic acquisitions, divestitures and business combination transactions, in light of industry developments, economic and market conditions and challenges facing participants in the industry." However, the Registration Statement fails to disclose whether, in "evaluating and considering" these strategic options: (i) FLIR executed standstill agreements with any potential counterparties, and, if so, (ii) whether those standstill agreements included "Don't Ask, Don't Waive" ("DADW") obligations that would preclude these potential counterparties from making an unsolicited acquisition proposal.

45. Disclosure of any standstill obligations is especially material here because: (i) FLIR did not perform *any market check* whatsoever, (ii) and thus the Board is touting the "fiduciary out" clause in the "no-shop" provisions in the Merger Agreement as a substitute for a pre-signing market check or go-shop period, and (iii) the "no-shop" provisions expressly contemplate the possibility that FLIR may have existing standstill agreements with other potential counterparties and allow FLIR to waive those standstill obligations. If potential counterparties are bound by a DADW provision, then the purported "fiduciary out" clause is effectively illusory. *See Koehler v. NetSpend Holdings, Inc.*, C.A. No. 8373-VCG, 2013 Del. Ch. LEXIS 131, at *71-72 (Del. Ch. Ct. May 21, 2013).

46. The Registration Statement discloses that Defendant Smith – a director of both Teledyne and FLIR – "unwittingly" shared with Teledyne's Executive Chairman an email exchange among the FLIR Board members that "included commentary from Mr. Cannon on the U.S. Air Force program of record opportunity he believed FLIR would not win" but fails to disclose: (i) what steps Defendant Smith took after realizing he "unwittingly" disclosed this exchange, and (ii) what steps the other Individual Defendants took upon learning that it had been "unwittingly" disclosed.

**B. The Registration Statement Omits Material Information Regarding the Fairness Analysis**

47. The Registration Statement also omits material information regarding the Company's Financial Advisors' Fairness Opinion and the various valuation analyses that the Company's

Financial Advisors performed to render the opinion but fails to provide enough information regarding the necessary data, support for conclusions, or the existence of, or basis for, the underlying assumptions that underpin the fairness opinion. Specifically, the Registration Statement does not disclose enough information regarding the financial projections, inputs and assumptions for various financial valuations. Without this information, shareholders cannot replicate the analyses, confirm the valuations, evaluate the Financial Advisors' opinion that the Merger Consideration is fair, or accurately assess the reliability of the Fairness Opinion. The informative value of the Fairness Opinion is not in its conclusions, but in the valuation analyses that support them. Thus, the key inputs, which are intrinsically baked into those conclusions, must also be fairly disclosed.

48. First, with respect to the FLIR Management Projections beginning on Page 100 and the Teledyne Pro Forma Projections beginning on Page 102, the Registration Statement fails to disclose the line-items used to derive the Unlevered Free Cash Flow projections, including (i) Taxes (or tax rate), (ii) Capital expenditures, (iii) Costs associated with mergers and acquisitions, (iv) Changes in net working capital, and (v) Any other cash items.

49. With respect to Goldman Sachs' *Discounted Cash Flow Analysis* ("DCF") beginning on Page 108, the Registration Statement fails to disclose: (i) the full rationale and basis for selecting a discount rate range of 6.5% to 9.0%, including the actual inputs that were used, (ii) the terminal values and Goldman Sachs' full rationale and basis for selecting a an illustrative range of terminal year EV/EBITDA multiples of 12.0x to 15.0x, and (iii) a full sensitivity table based on the entire range of discount rates and multiples. Without this information, it is impossible to determine whether the discounted cash flow analysis actually provides a reasonable range for the Company's intrinsic value. Indeed, a banker can make any transaction seem "fair" simply by changing the inputs and assumptions to project and discount future cash flows below the present value of the merger consideration.

50. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* beginning on Page 108, the Registration Statement fails to disclose: (i) the full rationale and basis for selecting

a discount rate of 8.25%, including the actual inputs that were used, (ii) Goldman Sachs' full rationale and basis for selecting a range of NTM EBITDA multiples of 16.0x to 20.0x, and (iii) a full sensitivity table across all years and based on the entire range of multiples.

51. With respect to Goldman Sachs' *Selected Transactions Analysis* beginning on Page 108, the Proxy fails to disclose: (i) the objective criteria, if any, that Goldman Sachs relied upon in selecting the transactions analyzed as "similar" to FLIR, including the range of enterprise values in the selected transactions, (ii) whether each transaction contemplated cash consideration, stock consideration, or a cash/stock mix, and (iii) Goldman Sachs' full rationale and basis for selecting a range of last-twelve-months EBITDA multiples of 12.3x to 21.0x to value the Company, including which (if any) of the selected precedent transactions were deemed most similar to the Proposed Transaction and how Goldman Sachs accounted for the fact that the LTM EBITDA multiples in many of the other transactions were not affected by the Covid-19 pandemic.

52. With respect to Goldman Sachs' *Premia Analysis* beginning on Page 109, the Proxy fails to disclose: (i) the actual transactions analyzed, (ii) the date of each transaction, (iii) the equity value in each transaction, and (iv) the premium paid in each transaction.

53. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* beginning on Page 109, the Registration Statement fails to disclose: (i) the full rationale and basis for selecting a discount rate of 8.25%, including the actual inputs that were used, (ii) Goldman Sachs' full rationale and basis for selecting a range of NTM EBITDA multiples of 28.0x to 34.0x, and (iii) a full sensitivity table across all years and based on the entire range of multiples.

54. If a proxy discloses financial projections and valuation information, such projections and valuations must be complete, accurate, and honest. The question is not simply whether there is a duty to speak, but also whether there may be liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See*

*Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections, assumptions, and inputs relied upon by Defendants' financial advisors, but have omitted crucial line items, reconciliations, and other information. Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

55. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

58. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

59. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

60. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by the Company's Financial Advisors in support of its fairness opinion.

61. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

62. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the Company's Financial Advisors reviewed and discussed its financial analyses with the Board, and further states

that the Board considered the financial analyses provided by the Company's Financial Advisors, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the Company's Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the Company's Financial Advisors as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

63. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

64. The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

65. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

66. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction.  They were thus directly involved in preparing this document.

70. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

71. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

72. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

73. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 15, 2021

**OF COUNSEL:**

**ADEMI LLP**
Guri Ademi
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com
      jfruchter@ademilaw.com

*Attorneys for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*